# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SUHA ELQUTT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 18-CV-0259-CVE-JFJ |
| ) | |
| VIC REGALADO, in his official capacity ) | |
| as Sheriff of Tulsa County, ) | |
| GARNETT LEE, in his individual and ) | |
| official capacities, ) | |
| JUDY POUNDS, in her individual and ) | |
| official capacities, ) | |
| PAUL TRYON, in his individual and ) | |
| official capacities, ) | |
| JAMES COLLIS, in his individual and ) | |
| official capacities, ) | |
| TULSA COUNTY SHERIFF DEPUTIES ) | |
| JOHN DOES 1 AND 2, in their ) | |
| individual and official capacities, ) | |
| TULSA COUNTY SHERIFF DEPUTY ) | |
| JANE DOE, in her individual and ) | |
| official capacities, ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

Now before the Court is Defendants' Motion to Dismiss (Dkt. # 7). Defendants argue that plaintiff has failed to state a claim upon which relief can be granted and, even if she has, the individual defendants have qualified immunity from suit. Plaintiff responds that defendants violated her constitutional rights under the Free Exercise Clause of the First Amendment by requiring her to remove her hijab when she passed through a security screening at the Tulsa County District Court. In a footnote, plaintiff also requests leave to amend her complaint to add a claim that she was denied access to the courts. Dkt. # 11, at 11 n.1.

# I.

On April 10, 2018 at about 1:15 p.m., Suha Elqutt and her attorney, Sadie Temple, were in line to enter the Tulsa County Courthouse, and they were waiting to pass through a metal detector. Dkt. # 2, at 6. Elqutt states that she is a practicing Muslim, and her religious beliefs require her to wear a headscarf, or hijab, in the presence of men who not members of her immediate family. Id. at 3. Elqutt entered the basement door of the courthouse and she was asked by Tulsa County Sheriff's Office (TCSO) Deputy Garnett Lee to remove her hijab. Id. at 6. Elqutt explained that it was against her religious beliefs to remove her hijab in public, and Lee allowed Elqutt to walk through a metal detector without removing her hijab. Id. Elqutt set off the metal detector and Lee again asked Elqutt to remove her hijab, and Elqutt and Temple told Lee that Elqutt could not remove her hijab in the presence of men. Id. at 6-7. Temple asked Lee if he could conduct a pat-down of Elqutt's head to search for prohibited items, but Lee rejected this request. Id. at 7. However, Lee did agree to allow Elqutt to leave her hijab on while he used a handheld metal detector wand around Elqutt's head. Id. The wand alerted to the presence of metal and Elqutt suspected that her earrings or the pin holding her hijab in place could be setting off the metal detector. Id. at 7. Elqutt removed her earrings and the pin, but the wand still alerted to metal around Elqutt's head. Id.

Lee again asked Elqutt to remove her hijab, and Elqutt responded that she would remove her hijab for a female deputy while no men were present. Id. Elqutt claims that Lee refused to call for a female deputy and, instead, he contacted his supervisor and told Elqutt that she would have "trouble" if she refused to remove her hijab. Id. at 8. TCSO Deputies Paul Tryon, James Collis, and three other TCSO employees arrived, and there was one female deputy among the TCSO employees. Id. Elqutt requested that she be permitted to remove her hijab in the presence of the female deputy

2

only, and she claims that she was directed to take off the hijab in front of male deputies and members of the public. Id. Elqutt alleges that she was told that only Lee could be present when her hijab was removed; another male deputy allegedly stated multiple times that male deputies were going to watch her take off her hijab. Id. Temple claimed that the deputies were violating Elqutt's First Amendment rights and that Elqutt was effectively being denied entry to the courthouse. Id. at 9. Temple and Elqutt met outside for about 10 minutes to discuss Elqutt's options. Id. TCSO deputies Judy Pound and Jane Doe approached Elqutt and told her that she would not be permitted to enter the courthouse without taking her hijab off in public. Id. Elqutt and Temple explained to the female deputies that it was against her religious beliefs to remove her hijab in front of men, but the female deputies refused to examine Elqutt in a private space. Id. Elqutt and the female deputies agreed that the female deputies would remove Elqutt's hijab in the nearby parking lot between two parked cars. Id. Elqutt states that she crouched between two cars while the female deputies removed her hijab, and she claims that men could have walked past while her hijab was removed. Id. at 10.

Elqutt filed this case alleging claims against defendants under 42 U.S.C. § 1983 and the Oklahoma Religious Freedom Act, OKLA. STAT. tit. 51, § 251 et seq. (ORFA). Elqutt claims that defendants violated her rights to the free exercise of religion under the First Amendment by forcing her to remove her hijab in public in order to gain access to the Tulsa County Courthouse. In a footnote, Elqutt states that she is seeking leave to file an amended complaint asserting a claim of denial of access to the court, and she states that she would be filing a separate motion to amend. Dkt. # 11, at 11 n.1 However, no motion to amend has been filed and the Court will assume that plaintiff has chosen not to proceed with her request to seek leave to file an amended complaint.

II.

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." Id. (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 562. Although decided within an antitrust context, Twombly "expounded the pleading standard for all civil actions." Ashcroft v. Iqbal, 556 U.S. 662, 683 (2009). For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to a claimant.[1] Twombly, 550 U.S. at 555; Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are conclusory in nature. Erikson v. Pawnee Cnty. Bd. of Cnty. Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual averments are

---

[1] Defendant has filed as an exhibit to the motion to dismiss a video of the incident giving rise to this case. See Dkt. # 8. The Court is ruling on a motion to dismiss under Rule 12(b)(6) and may not generally consider evidence outside the pleadings. Defendant has cited no authority that the Court can review the video without converting the motion to dismiss into a motion for summary judgment, and the Court has not reviewed the video as part of its ruling on the motion to dismiss.

insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir. 1991).

### III.

Each of the defendants sued in their individual capacity (Lee, Pounds, Tryon, and Collis) argue that they are entitled to qualified immunity from suit under § 1983, because plaintiff has not shown that her constitutional rights were violated or that the law was clearly established on April 10, 2018. Dkt. # 7. Regalado argues that he has been sued only in his official capacity and cannot be held liable for money damages, and he asserts that plaintiff has not adequately alleged that she is entitled to injunctive relief. Id. at 27-28.

### A.

Plaintiff has alleged a § 1983 claim against Lee, Pounds, Tryon, and Collis in their individual capacities. Section 1983 provides a cause of action against any "person who, under color of statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . thereto to the deprivation of any rights, privileges, or immunities secured by the Constitution and law" of the United States. "The purpose of § 1983 is to deter state actors from using the badge of authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." Wyatt v. Cole, 504 U.S. 158, 161 (1992). The Supreme Court has held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity shields public officials from facing the burdens of litigation and is an immunity from suit, not simply a defense to a plaintiff's

5

claims. Serna v. Colorado Dept. of Corrections, 455 F.3d 1146, 1150 (10th Cir. 2006). The Tenth Circuit applies a two-step analysis to determine if a defendant is entitled to qualified immunity. A plaintiff must prove that the defendant's actions violated a specific constitutional right and, if the plaintiff has shown that a constitutional violation occurred, the plaintiff must show that the constitutional right was clearly established when the conduct occurred. Toevs. v. Reid, 685 F.3d 903, 909 (10th Cir. 2012). A court has the discretion to consider the steps in whatever order is appropriate under the circumstances. Id. at 910 (citing Pearson v. Callahan, 555 U.S. 223 (2009)). Plaintiff bears the burden to prove that her constitutional rights were violated and that the law giving rise to her claim was clearly established at the time the acts occurred. Cox v. Glanz, 800 F.3d 1231, 1246 (10th Cir. 2015); Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001).

The Court will exercise its discretion to consider whether the defendants allegedly violated a clearly established constitutional right before deciding whether a constitutional violation occurred. See Green v. Post, 574 F.3d 1294, 1299 (10th Cir. 2009). In a recent decision, the Tenth Circuit has explained that law is clearly established if the contours of a constitutional right are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Perry v. Durborow, 892 F.3d 1116, 1123 (10th Cir. 2018). The contours of a right are generally "sufficiently clear" only if the plaintiff "identif[ies] an on-point Supreme Court or published Tenth Circuit decision" or "shows 'the clearly established weight of authority from other courts [has] found the law to be as plaintiff maintains . . . .'" Id. District courts have been cautioned not to define a constitutional right "at a high level of generality" but, instead, "the clearly established law must be 'particularized' to the facts of the case." Id. To find that the law is clearly established, the district

6

court must "identify a case where an offic[ial] acting under similar circumstances as [defendant]" was held to have violated the constitutional right at issue. Id. at 1124.

Plaintiff acknowledges that there are no Supreme Court or Tenth Circuit cases under which a defendant has been found to have violated a person's rights under the Free Exercise Clause of the First Amendment under similar circumstances. Dkt. # 11, at 23. However, she argues that a reasonable officer would have been on notice that plaintiff had a right to a religious accommodation under the Free Exercise Clause of the First Amendment, and she claims that this situation is analogous to Boles v. Neet, 486 F.3d 1177 (10th Cir. 2007). In Boles, a prison inmate alleged that prison officials prohibited him from wearing religious garments when he was transported off-site for surgery, and he claimed that this violated his right to the free exercise of religion. 486 F.3d at 1179-80 The warden argued that he was following prison regulations that were in effect at the time, but he made no attempt to argue that there was a legitimate penological interest for the regulations as required under Turner v. Safley, 482 U.S. 78 (1987). The Tenth Circuit found that the warden was not entitled to qualified immunity, because the prison regulations forbidding the inmate from wearing religious garments during transport were not reasonably related to any penological interest. Id. at 1184. Plaintiff argues that "[c]ombining the logic of *Turner* with the general holding in *Boles* suggests that [her] right to free exercise is not only clearly established but at least as comprehensive as that afforded to plaintiff in *Boles*." Dkt. # 11, at 24-25.

The Court finds that plaintiff has not shown that clearly established law would have put defendants on notice that requiring plaintiff to remove her hijab in a public place was a violation of plaintiff's constitutional rights. Plaintiff analogizes to Boles and Turner for the proposition that even a prison inmate has a constitutional right to the free exercise of religion in the context of wearing a

7

religious garment. However, Boles turned on the fact that the warden made no attempt to show that there was a legitimate penological interest in requiring the plaintiff to remove his religious garments, and its holding is limited to an inmate's right to wear religious garments in a narrow set of circumstances. In this case, plaintiff was attempting to enter a courthouse and she repeatedly set off a metal detector, and this gave rise to a legitimate concern that plaintiff could be carrying a weapon. Plaintiff acknowledges that Lee did not immediately require her to remove her hijab, and he attempted to accommodate plaintiff by using a metal detector wand in an attempt to allow plaintiff to wear her hijab while entering the courthouse. Even if plaintiff is correct that she had a right to a religious accommodation, the facts alleged in her complaint show that defendants did attempt to accommodate plaintiff's religious beliefs. The more important problem with plaintiff's argument is that she is attempting to define her constitutional right at a very high level of generality, and plaintiff has not identified an on-point Supreme Court or Tenth Circuit decision or even a case arising under somewhat similar circumstances in which the defendant was found to have violated a plaintiff's constitutional rights. Plaintiff has not met her burden to show that defendants violated her clearly established constitutional rights, and defendants Lee, Pounds, Tryon, and Collis are entitled to qualified immunity as to plaintiff's § 1983 claims against them in their individual capacities.

**B.**

Plaintiff also seeks relief under § 1983 against each of the defendants in their official capacities. A claim against a state actor in his official capacity "is essentially another way of pleading an action against the county or municipality" he represents, and is considered under the standard applicable to § 1983 claims against municipalities or counties. Porro v. Barnes, 624 F.3d

1322, 1328 (10th Cir. 2010). In the case of a municipal entity, the "under color of state law" element requires that the constitutional deprivation occurred pursuant to official policy or custom. See Monnell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978). A municipal entity may be held liable for an act it has officially sanctioned, or for the actions of an official with final policymaking authority. Pembaur v. City of Cincinnati, 475 U.S. 469, 480, 482-83 (1986); see also City of St. Louis v. Praprotnik, 458 U.S. 112, 127-28 (1988). A plaintiff "must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." Barney v. Pulsipher, 143 F.3d 1299, 1307 (10th Cir. 1998) (quoting Board of County Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 404 (1997)). Money damages are not available against a defendant sued in his or her official capacity, and plaintiff may seek only injunctive relief against defendants on her official capacity claims. Brown v. Montoya, 662 F.3d 1152, 1161 n. 5 (10th Cir. 2011) (citing Hafer v. Melo, 502 U.S. 21 (1991)).

      The Court has reviewed plaintiff's complaint and her response to the motion to dismiss, and it is unclear what official policy or custom allegedly gave rise to a violation of her constitutional rights. It appears that plaintiff may be alleging that Regalado failed to enact a policy to protect persons who pass through the metal detector at the Tulsa County Courthouse and refuse to remove a religious garment or headgear on religious grounds. Dkt. # 11, at 26. The Court finds that it is unnecessary to determine what, if any, official policy that plaintiff is alleging was violated, because she has not alleged facts suggesting that she would be entitled to injunctive relief against defendants. The Supreme Court has stated that injunctive relief for a civil rights violation is "unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any

real or immediate threat that the plaintiff will be wronged again—a 'likelihood of substantial and immediate irreparable injury.'" City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983) (quoting O'Shea v. Littleton, 414 U.S. 488, 502 (1974)). Speculative claims of future injury are insufficient to warrant the issuance of an injunction. Id. The Court has reviewed plaintiff's complaint and she does not allege that she is likely to return to the Tulsa County Courthouse. Instead, she seeks injunctive relief "to prevent the Tulsa County Sheriff and his deputies from continuing their unconstitutional practice and/or policy of forcing individuals to remove their religious head coverings in public . . . ." Dkt. # 2, at 2. Plaintiff has not filed this case as a putative class action and she may not seek injunctive relief on behalf of other persons who are not named as plaintiffs. Plaintiff's complaint contains no allegations suggesting that there is a substantial and immediate risk of irreparable injury and her claims against defendants in their official capacities are moot. Jordan v. Sosa, 654 F.3d 1012, 1024 (10th Cir. 2011).

## C.

Plaintiff has alleged a state law claim under the ORFA, asserting that forcing her to remove her hijab in the presence of men substantially burdened her right to the free exercise of religion. Dkt. # 2, at 11-12. Under 28 U.S.C. § 1367(c), a federal district court may decline supplemental jurisdiction when it has "dismissed all claims over which it has original jurisdiction." The Court recognizes that it has discretion to retain jurisdiction over a pendent state law claim in some circumstances. United Mine Workers of America v. Gibbs, 383 U.S. 715 (1966). However, "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." Id. at 726; see also United States v. Botefuhr, 309 F.3d 1263, 1273-74 (10th Cir. 2002) ("a district court should normally dismiss supplemental state law

claims after all federal claims have been dismissed, particularly when the federal claims are dismissed before trial"). The Court's decision to exercise supplemental jurisdiction is discretionary, but it should consider the "nature and extent of pretrial proceedings, judicial economy, convenience, and [whether] fairness would be served by retaining jurisdiction." Anglemeyer v. Hamilton County Hosp., 58 F.3d 533, 541 (10th Cir. 1995) (quoting Thatcher Enter. v. Cache County Corp., 902 F.2d 1472, 1478 (10th Cir. 1990)). The Court finds that there are no factors present that would warrant the exercise of supplemental jurisdiction over plaintiff's state law claim. The case is at an early stage and the parties have not conducted any discovery, and there have been no pretrial proceedings that would require this Court's continued involvement in the case. Plaintiff's sole remaining claim arises under Oklahoma law, and the state courts have a strong interest in defining the scope of the ORFA. The Court declines to exercise supplemental jurisdiction over plaintiff's ORFA claim, and her ORFA claim will be dismissed without prejudice to refiling.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss (Dkt. # 7) is **granted**, and plaintiff's claims are **dismissed without prejudice**. A separate judgment of dismissal is entered herewith.

**DATED** this 22nd day of January, 2019.

*(signed)* Claire V. Eagan
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE